41 F.3d 1508
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Terry J. BENDER, Defendant-Appellant.
 No. 93-3896.
 United States Court of Appeals, Sixth Circuit.
 Nov. 7, 1994.
 
 Before: KENNEDY, RYAN, and NORRIS, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Terry Bender appeals the judgment of sentence entered on his guilty pleas to conspiring to possess and to distribute cocaine, in violation of 21 U.S.C. Secs. 841(a)(1), 846; to being a felon in possession of a firearm, in violation of 18 U.S.C. Sec. 922(g)(1); and to laundering money, in violation of 18 U.S.C. Sec. 1956(a)(1). Bender argues that (1) the district court abused its discretion in denying Bender's motion to vacate his guilty pleas; (2) the prosecution violated a term of Bender's plea agreement in failing to move for a downward departure under U.S.S.G. Sec. 5K1.1; and (3) the district court committed plain error in enhancing Bender's sentence under U.S.S.G. Sec. 3B1.1. We conclude that all three assignments of error are without merit, and we affirm.
 
 I.
 
 2
 On March 17, 1993, a grand jury indicted Bender, along with eighteen other individuals. Bender was charged with a variety of drug-related offenses, and at his arraignment entered pleas of not guilty.
 
 
 3
 Bender later entered a plea agreement with the government under which the government allowed him to plead guilty to conspiracy to possess cocaine, being a felon in possession of a firearm, and laundering money, in exchange for his full cooperation in the prosecution of his coconspirators. The agreement states in part:
 
 
 4
 23. The defendant further agrees to fully cooperate, in this case, or any other case indicted as a result of his cooperation, with attorneys for the United States of America, federal, state, and local investigative agencies, federal and state grand juries, by providing complete, truthful and accurate information and testimony, if required, concerning any unlawful activities of any kind of which the defendant is aware.
 
 
 5
 ....
 
 
 6
 27. In the event the defendant fully cooperates with the Government in the Northern District of Ohio, the Government and the defendant will recommend to the Court, at the time of sentencing, a three (3) level reduction pursuant to Federal Sentencing Guidelines Sec. 5K1.1, to reflect the defendant's substantial cooperation. The defendant understands that in the event the defendant does not fully cooperate with the Government, that the Government is released from its obligation to recommend the three (3) level reduction at the time of sentencing and the defendant has no right to withdraw his guilty plea.
 
 
 7
 On August 4, 1993, Bender met with Assistant United States Attorney Sharon Long to review his proposed testimony for the trial of a codefendant, Jamal Merriweather. According to Long, Bender was very cooperative. However, five days later, Bender refused to testify in the Merriweather trial and filed a motion to vacate his guilty pleas. The district court denied Bender's motion to vacate his pleas and proceeded to sentence him to 360 months in prison, the term recommended in the presentence report. The government did not recommend that Bender receive a reduction in his base offense level for cooperation, because it concluded that he failed to "fully cooperate" by refusing to testify at the Merriweather trial. Bender now appeals.
 
 II.
 A.
 
 8
 Bender challenges the district court's denial of his motion to vacate his guilty pleas. We review a district court's decision to deny a motion to withdraw a guilty plea for an abuse of discretion. United States v. Alexander, 948 F.2d 1002, 1003 (6th Cir.1991) (per curiam ), cert. denied, 112 S.Ct. 1231 (1992); United States v. Head, 927 F.2d 1361, 1375 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991). Rule 32(d) of the Federal Rules of Criminal Procedure provides that a court may permit a defendant to withdraw a guilty plea prior to sentencing "upon a showing by the defendant of any fair and just reason." The defendant has the burden of proving that withdrawal of the plea is justified. United States v. Stephens, 906 F.2d 251, 252 (6th Cir.1990). In deciding whether to permit a defendant to withdraw a plea, the district court may consider a number of factors including (1) whether the defendant has asserted his innocence; (2) the amount of time elapsed between the plea and the motion to vacate; (3) the presence or absence of a valid reason for the failure to present the grounds for withdrawal earlier; and (4) potential prejudice to the government. Alexander, 948 F.2d at 1003-04.
 
 
 9
 Bender moved to vacate his pleas on August 9, 1993, the day before he was sentenced. He had entered his guilty pleas 59 days earlier. The district court denied the motion because it concluded that Bender failed to adequately explain why he waited so long to withdraw the pleas. The district judge observed: "I see no basis, no reason that's been submitted or offered for why it was the day before sentencing that the motion was made. The reasons put forth are not convincing in the least." The district court noted further that Bender admitted selling cocaine and committing the crimes described in the plea agreement, and read the plea agreement in court on the day he entered his pleas and stated that he fully understood the terms of the agreement. The court also observed that if Bender were permitted to withdraw his pleas, there would be a "great deal of potential for prejudice" for the government.
 
 
 10
 Bender argues that the district court abused its discretion in denying his motion to vacate his pleas because (1) he did not thoroughly read the plea agreement, and (2) he was forced to plead guilty because the government was threatening to indict his mother. We are not persuaded.
 
 
 11
 At the plea hearing, the district court informed Bender of the ramifications of his guilty pleas, and Bender assured the court that his pleas were freely given:
 
 
 12
 THE COURT: Now, you've indicated that the terms of the plea agreement as put on the record by Mr. Eakeman were in fact your understanding of it.
 
 
 13
 Has anyone, and this includes your attorney or the U.S. Attorney or anyone connected with the Court, has anyone made any other or different promise to you in order to get you to plead guilty?
 
 
 14
 [BENDER]: No, your Honor.
 
 
 15
 THE COURT: Okay.
 
 
 16
 Now, the charge in Count 1 of conspiracy to distribute cocaine has a statutory penalty of a mandatory minimum of ten years up to life in prison, a $4 million fine, and at least five years of supervised release.
 
 
 17
 Do you understand that?
 
 
 18
 [BENDER]: Yes, your Honor.
 
 
 19
 THE COURT: And the charge in Count 3 of being a felon in possession of a firearm carries a statutory penalty of not more than ten years in prison, $250,000 fine, and not more than three years of supervised release.
 
 
 20
 Do you understand that?
 
 
 21
 [BENDER]: Yes, your Honor.
 
 
 22
 THE COURT: All right.
 
 
 23
 And the charge in Count 8 of money laundering carries a statutory penalty of a maximum of 20 years in prison, a $250,000 fine, and not more than five years of supervised release.
 
 
 24
 Do you understand that?
 
 
 25
 [BENDER]: Yes, your Honor.
 
 
 26
 ....
 
 
 27
 THE COURT: All right.
 
 
 28
 Now, in the plea agreement at Page 11, starting at Paragraph 34, I would ask you to refer to that. Paragraphs 34, 35, 36, and 37 contain facts about your involvement in these matters, and I would ask you if you have read those paragraphs?
 
 
 29
 I'll give you a chance to look at them right now.
 
 
 30
 [BENDER]: Yes, I read them.
 
 
 31
 THE COURT: You have read them.
 
 
 32
 And you understand what those paragraphs say with respect to your activities in this matter, and specifically with respect to the three counts that you propose to plead guilty to?
 
 
 33
 Do you agree with that statement of facts?
 
 
 34
 [BENDER]: Yes, your Honor.
 
 
 35
 THE COURT: All right.
 
 
 36
 And that does represent in fact activities that you undertook?
 
 
 37
 [BENDER]: Yes, your Honor.
 
 
 38
 This exchange between the district court and the defendant belies Bender's contention that he did not read or understand the plea agreement. The district court was at pains to be sure that Bender fully understood the terms of the agreement. The record speaks for itself.
 
 
 39
 Bender's claim that his guilty pleas were coerced because the government was prosecuting his mother is not supported in the record. Bender asked the government to drop its case against his mother. He, not the government, initiated the discussion. Moreover, there was never any quid pro quo on this issue; the government dropped its case against Bender's mother because of our decision in United States v. McDougald, 990 F.2d 259 (6th Cir.1993), not in consideration of Bender's pleas.
 
 
 40
 Therefore, we conclude that the district court did not abuse its discretion in denying the defendant's motion to vacate his guilty pleas because (1) Bender did not deny involvement in the crimes; (2) he waited 59 days before moving to withdraw his pleas without explaining his reason for delay; (3) he understood the terms of the plea agreement when he entered his pleas; and (4) he failed to demonstrate a fair and just reason for withdrawing his guilty pleas.
 
 B.
 
 41
 Next, Bender argues that the government breached the plea agreement because it promised to move for a downward departure under U.S.S.G. Sec. 5K1.1 if Bender cooperated with the government. When a plea agreement includes a promise by the government to move for a substantial assistance departure should the defendant provide it, and the government does not so move, the district court may consider whether the government has breached the plea agreement. The circuits are in disagreement as to the standard that should apply to a trial court's determination as to whether there has been a breach of a plea agreement. Some circuits hold that the question should be reviewed de novo. See, e.g., United States v. Fisch, 863 F.2d 690, 690 (9th Cir.1988). Others hold that the trial court's determination on this issue is factual and should be reviewed for clear error. See, e.g., United States v. Conner, 930 F.2d 1073, 1076 (4th Cir.), cert. denied, 112 S.Ct. 420 (1991). Because the defendant failed to raise this claim in the district court, we will review this issue for plain error only.
 
 
 42
 Plea agreements are contractual and thus are governed by traditional principles of contract law. United States v. Robison, 924 F.2d 612, 613 (6th Cir.1991). Where a defendant fulfills his promise in entering a guilty plea, the prosecution is bound to keep any promise made in exchange. Santobello v. New York, 404 U.S. 257, 262 (1971). U.S.S.G. Sec. 5K1.1 provides, in part: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."
 
 
 43
 Bender argues that he cooperated with the government and that the government was therefore bound to move for a downward departure at sentencing. Bender's reliance on Santobello, however, is misplaced. In Santobello, the prosecutor's promise was unequivocal and unconditional. Not so here. The government's promise to Bender was conditioned on his full and continued cooperation. Clearly, Bender's refusal to testify at the Merriweather trial and his motion to withdraw his guilty pleas amount to something less than full cooperation. Thus, we find no plain error.
 
 C.
 
 44
 Finally, Bender challenges the district court's assessment of a three level sentence enhancement under U.S.S.G. Sec. 3B1.1(b) for an aggravating role. Bender, however, did not object at sentencing to enhancement based upon his role as a manager or a supervisor, so we review this issue for plain error. United States v. Sammons, 918 F.2d 592, 601 (6th Cir.1990).
 
 
 45
 The sentencing guidelines mandate that a sentencing court increase a defendant's offense level by three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive...." U.S.S.G. Sec. 3B1.1(b). The government bears the burden of proving the grounds for the enhancement by a preponderance of the evidence. United States v. Gibson, 985 F.2d 860, 866 (6th Cir.), cert. denied, 113 S.Ct. 2981 (1993). The enhancement requires proof of something more "than a mere buyer/seller relationship," id., but not much more. In United States v. Barrett, 890 F.2d 855, 867 (6th Cir.1989), the court upheld an enhancement under section 3B1.1 where the defendant supplied drugs to at least three buyers, procured drugs from another state, and dealt in substantial quantities. Accord United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.), cert. denied, 500 U.S. 945 (1991). Further, Application Note 4 to section 3B1.1 provides, in part:
 
 
 46
 Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.
 
 
 47
 In the plea agreement, Bender stipulated that he was a supplier of cocaine to more than five individuals and that the amount of cocaine involved in his jointly undertaken criminal activity in the conspiracy was between 50 and 150 kilograms. Based upon that representation by Bender and other information contained in the presentence report, the probation department recommended a three level enhancement for Bender's role in the offense as a manager or supervisor. Bender did not object; nor did he object when the court indicated its intention to adopt the probation department's enhancement recommendation. In light of the defendant's stipulation and his failure to object to the recommended role enhancement, the government had no occasion to introduce the substantial evidence it claims to have concerning the details of Bender's managerial or supervisory role. He would now have us vacate the sentence for insufficient evidence to support the district court's role enhancement decision. We decline to do so. No plain error has been shown in the court's decision to enhance Bender's sentence under section 3B1.1(b).
 
 
 48
 AFFIRMED.